Good morning, Your Honors, and may it please the Court. My name is John Sheridan, a certified law student representing the petitioner Ana Biocini. I'd like to set aside five minutes for rebuttal. Your Honors, this case raises complex issues that implicate Ms. Biocini's constitutional rights. Today, she's 64 and appears before this Court for the third time as part of a litigation that's consumed much of her adult life. It was 13 years ago that DHS began removal proceedings against her after she spent years providing the FBI with material intelligence on her former employer, the Cali Drug Cartel. She petitions this Court for several forms of relief to address the risk she faces as a drug informant. Because her criminal conduct ceased in 1995 before Ira, this Court should find that she's eligible for a 212C waiver of her deportation. Similarly, Ms. Biocini's eligible for withholding removal because of — Mr. Sheridan, don't we have cases that say that the 212C waiver applies only if the person were convicted before AEDPA and IRA were passed and eliminated to a 212C? Your Honor, the cases where the Court has had occasion to consider that include Vartelis and St. Cyr. And in those cases, the conviction and the plea were the same date, both of which occurred prior to Ira. And neither court had occasion to consider instances such as Ms. Biocini's. Do you have any cases that hold the opposite, that a — the 212C waiver is still viable even if the conviction was after AEDPA and IRA was passed? None from this circuit, Your Honor. And the only case that reaches that issue is Holder v. Sessions, which the government recently noted in their 28J. However, that case is distinguishable in one important reason, and it's for the fact that Ms. Biocini faced a legal consequence because of her conduct alone. Under former INA 212A23, she would have been, if the attorney general or a consular officer had — had reason to believe that she was a drug trafficker, they would have — could have found her inadmissible or at the time would have been excludable. And that alone, as Vartelis is clear, the inability to travel is a severe sanction, and such potential banishment is the type of a new legal disability that Landgraf itself says that retroactive application of statutes should not impose on any person. And because Ms. Biocini endured that new legal consequence because of her conduct alone, we believe this Court should find that she's eligible for that 212C waiver. Let me just want to make sure I understand. You say she's eligible for the 212C waiver because — based on the date that she was arrested, that she would be therefore eligible because that was before the change in the law? Is that what you're saying? That's correct, Your Honor. It's — it was on that date in 1995 when she — when the government served the indictment on her for — and charged very specific conduct, conspiracy. But aren't we supposed to look at completed acts? Is that what you're arguing, that the completed act that's been outlined in the law for us is just the arrest and not the date of her plea? I just — I mean, that's what we're kind of drilling down on. Why wouldn't it include the date of her plea? Well, in this case, Your Honor, we ask the Court to find that her completed conduct should control, first, because there were — she did face the — Her completed conduct of what? Of the — the allegation that she was a conspiracy — Just the — just the charge. That's correct. And not the plea. That's right. And the charge should — should be the anchor point, if you will, for retroactivity analysis. Because? Because there's substantial reliance interests that attach when you retain counsel. At the moment you're charged, you and counsel consider all the legal consequences as well as the legal remedies available to you at that time. And it would be difficult to impose on any counsel the burden to predict any future changes in the law and thereafter advise their counsel accordingly. And such is the burden we would have had to hold Ms. Piazzini and her counsel to. Undoubtedly, in 1995, and St. Cyr acknowledges this, she would have — she and her counsel would have been aware of the immigration consequences facing a conviction of that offense, and she would have been aware of the ability of 212C to waive her excludability as well as waive her deportability. And then the law changed. I noticed that you challenged the regulations applicable to determining if a person is eligible for a Section 212C waiver before the agency below. But it doesn't appear that you renewed that challenge in your appeal to us. Don't these regulations provide a reasonable way to determine the question that you've kind of placed before us? In other words, the regulations look to the date on which the person entered her plea. Why isn't that the end of it? That may be relevant, Your Honor. However, here we ask this Court to find this issue, as it's one of first impression before the Ninth Circuit, that the date of completed conduct should control for any retroactivity analysis, because that's more consistent with the tenets of Landgraf and what the Supreme Court set out there. You're fighting the First Circuit on the Second Circuit. Your Honor, they did — Who gives you? You know, Holder v. Sessions did reach that. However, they, importantly, at the very end of their decision, note that, and I'm quoting, Your Honor, Vartelis has mixed language and does not reject the position that the date of conduct should control. To me, that leaves the door open for a Court faced with the right facts to find that the date of conduct should control where there is prejudice, and as is here, because Ms. Biassini and her counsel would have been unable to predict the legal consequences stemming from the charges that the government filed against her, it seems more just that she should be able to apply for the 212C waiver. All right. Let's talk about particularly serious crime. It seems like Blandino Medina says that the BIA only needs to consider three of the four Francesco factors. Do you disagree with that? I do, Your Honor. I read Blandino Medina differently. Importantly, I think the BIA first, and thereafter the government, in their brief cite to Blandino Medina for the proposition that the Francesco factors have evolved. However, that happens in a footnote, and that footnote cites to another Ninth Circuit case in Concomolage, which cites to original authority from the Ninth Circuit, which is Ramirez-Ramos. And there, Ramirez-Ramos, it's a 1987 case. It never altered the Francesco factors. In fact, it never even mentions the word Francesco. Importantly, Ramirez-Ramos simply clarifies that when we're evaluating whether or not an immigrant is eligible for withholding removal, we only ask if they have committed a particularly serious crime. We don't need to re-ask at that juncture the question of dangerousness. They do not change the legal standard of what it takes to find a particularly serious crime. And as Blandino Medina and this Court's most recent authority in Gomez v. Sanchez clarify, the Francesco factors are alive, all four of them. And failing to consider the fourth factor under Francesco was prejudicial to Ms. Biasini. And your best case for that is? I would lean on Gomez-Sanchez, Your Honor. And that case, again, it's a 2018 case from this circuit. But importantly, Gomez-Sanchez, in their quotes to authority, which similarly talks about a case that lends credibility to this assertion, that case is Alfonso v. Holder. It's another Ninth Circuit case from 2013. And there they similarly clarify that the Francesco factors are essential, all four of them, and that it's a different question whether or not you look at the withholding removal analysis that the Ramirez-Ramos court answered. That's a different analysis than whether or not the immigrant has committed a particularly serious crime in the first place. And so let's move on to the PSR and how the IJ and BI relied on portions of the PSR. There were apparently, there was apparently reliance by the IJ on various facts that were contained within the PSR. However, the, as you have pointed out in your briefing, that the sentencing court ruled or found that all of the contested facts were, he was going to rule in your client's favor. Is that correct? As I understand your question, Your Honor, yes, Judge Breyer interpreted the pre-sentence report, or he acknowledged Ms. Biasini's interpretation of the pre-sentence report. However, he didn't make an adjustment to it which had to do with whether or not the parole officer wanted to have those facts included for some services that she was seeking availability for while she was serving her time in Dublin. But they didn't make an express note of changes. They didn't get to the bottom of what the facts were from the pre-sentence report. Judge Breyer did note, however, that Ms. Biasini disagreed with the facts in the pre-sentence report. Now, she disagreed, she disagrees now, but I have a question. I don't see that Ms. Biasini raised this improper evidence argument to the BIA in her appeal of the IJ decision. With respect to the CAT issue, Your Honor, or is this? She did, Your Honor. I think she exhausted that issue at every turn before. I mean, there were two things that she said that was in the pre-sentence report which she didn't agree with. One was that she was only the middle person and wasn't a very important factor in the conspiracy to import cocaine. And the other was that she wasn't guilty of bringing in 5 to 15 kilograms, but only one kilogram. Now, I didn't see that those issues were brought up to the BIA, and therefore, I think that your position is waived. I disagree, Your Honor. I think in either event, and if we're... Not in either event. What I want you to do is to tell me what portion of the BIA opinion or proceedings before the BIA to the attention of the BIA with your claim that they were not found. Remembering better now, Your Honor, I don't think that was specifically mentioned in our appeal to the BIA. In any event, I do think there's still prejudice when the BIA failed to consider the totality of the evidence with respect to Ms. Biasini's CAT claim. Well, if you don't bring up an issue to the BIA, Barron v. Oshcroft is very clear that we consider it waived. What I want you to do is to point to me the portion of the record which shows that Ms. Biasini brought up these two points, that she was only a middle person and that she didn't have 5 to 15 kilograms. I'd like to answer Your Honor's question, if I may, on rebuttal, as time is expiring. Okay. Thank you. May it please the Court, Victor Lawrence, on behalf of the Attorney General. This Court should recognize that Ms. Biasini was deportable as a result of her conviction. The waiver she sought was to remove that conviction. This is not an excludability case. Therefore, when she was convicted in 1998, it was one year after the repeal of the 212C waiver. So, the waiver was no longer available to her. And this law was not impermissibly retroactive with respect to her at all, because she was not excludable, as my opponent started to suggest, because she was not applying for admission to the United States. The issue is that she was deported as a result of her conviction for an aggravated felony drug trafficking crime. So it's the conviction that triggers her deportability? Absolutely, Your Honor. Right. And the cases that support that are which cases? A number of them, but they're cited in your brief. They're cited in the brief, as well as Holder, which does support that. To suggest that Holder, the First Circuit case, doesn't support that is just incorrect. The facts are square, that this was you cannot get a waiver based on the conduct when you're talking about a deportation ground for removal. Which requires a conviction. Which requires a conviction, correct. Not conduct, but conviction. I'm sorry? Not conduct, but conviction. Yes. So, the rest would not be enough, whether she's arguing that we should go based on the time of arrest and that she has to get counsel and all of this? No, what matters is the conviction, because what you're looking at is whether the new law, the repeal, attaches a new legal disability to past conduct. And, but the conduct, to past events, excuse me, I misspoke. But the past events that we're talking about to remove the deportable ground is the conviction itself. And that occurred after the repeal of the waiver. And that's why there's no impermissible retroactive effect with respect to 212C. If there are no more questions on that, I'll go to the particular serious crime ground. Here, the Board, remember that what happened the last time the case was at the Ninth Circuit. Last time, the Board said, based on matter of YL, which was an Attorney General opinion by Attorney General Mukasey, that this was a, per se, a particular serious crime, a drug trafficking, aggravated felony drug trafficking crime. So it didn't analyze any of the factors, really. It just kind of said, this is, per se, particularly serious. So the court remanded and said, no, you can't do that, because this case came out after that. So you have to look at the Francescu factors. It never said you have to make a separate determination for dangerousness, and the law doesn't require that. Blandino doesn't require that. No, there's nothing in the Court's jurisprudence that says, with respect, when you're considering a particular serious crime, you must do a separate determination on dangerous. To the contrary, the cases of this Court and the jurisprudence of this Court suggest that, no, once you determine the first three factors, it's presumed that you are a danger to the community. Well, you're, Mr. Sheridan, your opposing counsel here today, pointed us to Gomez-Sanchez, I believe. So what's your response to Gomez-Sanchez? So, Your Honor, thank you. I'm the one who brought Gomez-Sanchez to the Court's attention, because it actually supports our position in the 28-J letter, because it says in it that no separate determination for dangerousness is required. And that's why... But I think he went on and said, but the root of that, all four factors are required in the immigration context, and then went on to talk about Alfonso's, I believe, Alfonso's case. That's why I wanted to give you an opportunity to respond to that. Right. And I would have to check on that. He was citing to a citation within Gomez-Sanchez and a citation, I think, within that case to suggest that there is a need to determine dangerousness. But here, when the Court has already considered the other factors, and under this Court's jurisprudence in Blandino and Gomez-Sanchez, there's no need to do a separate analysis based on whether or not you're a danger to a community. And even when the last time the case was before this Court, Judge Scanlon pointed out in his dissent that this has been the law back since 1986, when he cited a matter of opinion. But this, the previous time that this case was before the Court is important for other reasons as well, because of the last sentence of the opinion prior to the dissent, in part, by Judge Scanlon. It says, Petitioner's remaining claims are dismissed. Those are the claims involving the Convention Against Torture and the particular serious crime claim. Now, the petitioner, of course, had an opportunity to seek further review of this decision. She did not do so. This decision is final. It dismissed those claims. Well, don't we determine that based on res judicata? Okay, so... If the decision is final? I mean, if that's what you're arguing? Well, res judicata really goes to a merits decision. And I can see that in my brief, I said something about res judicata. Well, because there wasn't a merits decision here. Right, but it is the law of the case. The law of the case is that these other claims are dismissed. But weren't they dismissed because they were moot? There's nothing that suggests that it was because they were moot. But let me go on, if I may, Your Honor, because it reaches the same point. So when these claims were dismissed, she had an opportunity to challenge this opinion. She did not. But then when it went back to the Board, and the Board issued a remand order to the addendum page 19, the Board indicated that the Ninth Circuit dismissed these claims, and therefore they're no longer part of this case. So she had an opportunity to challenge that remand order, but she did not. And then when it went back to the immigration judge, there was no testimony at all concerning Convention Against Torture and State-Created Danger. Nothing was brought up with respect to that. So she waived the issue first by not challenging the dismissal from this Court, then not challenging the remand order from the Board. Then she didn't bring the issue of CAT or State-Created Danger up to the immigration judge. And then she didn't raise it again until she brought it back to the Board when the immigration judge ruled that she had committed a particularly serious crime, that the conviction was for a particularly serious crime. So she's waived that issue of Convention Against Torture, in particular a serious crime, in a number of different ways. And the Court can't – she can't just revive that now in a petition for review after all those waivers. Sotomayor, so you're saying res judicata does not apply? Well, to the extent that – Because if it does apply, and I'm not sure I'm – I follow your reasoning. Sure. So normally res judicata is when there's a decision on the merits, as I understand res judicata principles. When I first looked at the briefing that was done back in 2008, I thought that there were merits decisions based – or that there were no jurisdictional claims based on Convention Against Torture or a particularly serious crime. So I was confused by the Court's language. But this case does seem to be in unique posture in that, because it's not really clear what the prior panel intended, at least from my review of it. So I'm struggling on how to interpret that. And so I really wanted to hear from both sides on that. You're saying that it's not a merits decision, and so therefore – that the prior decision wasn't a merits decision, so therefore – I'm saying whether it was merits or jurisdictional, it doesn't matter. Because? It was dismissed. It was dismissed, and she had the opportunity to challenge that and to seek further review, but she did not. So whether it was intended to be a merits decision – What's your best case on that, then? My best case is just that there's no precedent for the idea that a court can dismiss claims without saying that they're moot or in this regard and then have somebody be able to revive them even after it went back to the agency, which issued a new remand order saying that you can't bring these claims up anymore. That wasn't challenged either. Then she didn't even bring it up in the immigration court that, based on those multiple waivers, that issue has been resolved. You have a combination of law of the case and multiple waivers. Yes.  Thank you, Your Honor. Let's talk about the particularly serious crime. Sure. Because it seems like – I think it seems like the BIA decision specifically talks about the middle person and primary source as reasons that the IJ found Ms. Biossini's crime to be a particularly serious crime. And I'm not quite sure how she framed it, but she did talk about – make challenges to the factual. Determinations and arguments by the BIA in reaching its conclusion on whether or not this was a particularly serious crime. Right. And, of course, the jurisprudence of this Court says you can't reweigh those factors. No, of course we can't. And I'm clear about that. But we do – the only thing we look at is whether or not there was a basis, a substantial basis to support the IJ's determination, I think, or whether it was legitimate, basically. Whether they followed the appropriate standards. Well, and in this case – and whether they relied on appropriate evidence. Sure. And here there's a question on whether or not the IJ relied on appropriate evidence when it relied on contested questions in the pre-sentence report – contested evidence in the pre-sentence report. Looks like the cases that, you know, I was able to find with respect to that do – they don't deal with this specific factual scenario, but they do address and make clear that, you know, the IJs can rely on uncontested facts in the pre-sentence report. Here this was clearly contested, and the sentencing judge ruled in her favor. So how – what's your response to all of that? Well, so the – thank you, Your Honor. The first response is that there is no need to do a separate determination on dangerousness. So the other factors that were considered – Yeah, the other three factors, though. Doesn't this bear on the other three factors? The first three factors? And whether she was the middle person or whether she was the source of the drugs? It seems like it would overlap with all of them, and that's why the fourth factor really, to me, is not that major of an issue, but it seems like it would bear overall, whether or not on the Biocini factors that remain. Actually, the way I read this board opinion, addendum page 3, when they're discussing that she was only a middle person and never classified as a drug supplier or organizer, and they're quoting from the pre-sentence report, to me that's really going to the fourth factor, even though they didn't have to make a separate determination of it. Because you're looking at, is this person a danger to the community? And you say, well, you know, she was a middle person. Well, but it also goes to the first three, the nature of the conviction, the circumstances and underlying facts of the conviction, and the type of sentence imposed. And then you go on to the fourth factor on whether the type of crime indicated that she would be a danger to the community. Certainly it goes to the nature and the circumstances. I mean, does it not on whether or not she's the source and she's a middle person? I don't know that we can dissect that here at this point in time when looking at these factors. But I'm just troubled. The IJ clearly did seem to say that she was a middle person based on his read of the pre-sentence report. And this was not challenged to the board. It was not exhausted. And under Barron v. Ashcroft, again, I would say that she's legal. When would she have needed to raise that, I guess, is what I'm trying to figure out based on your argument. So if in fact the immigration judge, if she believed, which I don't concede, if she believed that the immigration judge relied on inappropriate factors in coming to its legal conclusion that she was convicted of a particularly serious crime, she should have advised or appealed to the board and said, you did not follow the appropriate standard because you considered things that should not have been considered. That argument, having not been made, has been unex— This has quite a long history, as we've noted. So at what point, when should she have done that? When this got remanded back, before it got decided the first time? Just help me because we have quite a long history with this case. Sure. And what I would suggest is if in fact these were considered at the very first indication. Well, you tell me when they were considered. I'm seeing that they were considered, it looks like, in the last BIA. In the last BIA, yes. And that was after the remand. So after the remand, remember, the remand instructions were, hey, you've really got to consider these other factors. And I think, you know, in the first several paragraphs, they consider all these things. And, yes, they mention these things, which were in the prescience report. But that doesn't diminish the fact that they considered all these other factors and made an appropriate determination that she was a danger. What do you mean, all these other factors? Just be clear for me what you mean. Because it seems problematic, and I'm curious to hear your waiver argument, but it seems problematic if the IJ made a determination on serious crime based on the three Francesco factors that's just limited to those and relied on evidence that was clearly contested and especially if the sentencing court, you know, in this case, found all those contested facts in her favor or did not consider them. I think that's exactly what Judge Breyer said at the time of resolving these. How can that be a legitimate basis for the IJ to rely on and the BIA to adopt? Well, I . . . And they're raising it now. And I'm not quite sure that they needed to do what you're saying, but I'm open to hearing your explanation. I think they did because the original IJ's consideration of whether or not she committed a particular serious crime occurred in 2006. And there was . . . we're on our second petition . . . Right, but it got sent back because the prior panel said, hey, you didn't really do your job or you need to do a better job of determining whether or not this was a particularly serious crime. Right. So it goes back, and the immigration judge considers a number of factors and determines that, yes, it was a particular serious crime. When the petitioner briefed the case, there was a lot of discussion about reweighing the evidence, which, of course, you can't do. Now, the question is, did the immigration judge rely on something he shouldn't have relied on? And was that a legal error to do so? And our position is, number one, that wasn't appropriately exhausted with the board after that point. And, number two, even . . . that it wasn't improper to begin with because he considered a lot of other factors that were not in the pre-sentence report. When it came to the fact that she was, you know, involved in a conspiracy to distribute a large amount of cocaine that . . . I understand that, but when they're all mixed in at this point, I just try to figure out how to resolve that. If she didn't waive it without sending it back for them to make a determination taking out those facts, I don't know how much that affected the IJ's determination. Right. And our position is that the court should not send it back for any addition. She's had several bites of the apple at this point. And she did not exhaust this issue in the last round to the board. But given the fact that they relied on the court . . . they relied on substantial evidence and other factors, on those first three factors besides this issue about the middle person . . . What's your best case on that? I mean, when there's problems with some of the evidence that they relied on, what's your best case that it doesn't get a remand? Best case that it doesn't get remanded on this issue, the particular serious crime, is that . . . two things. First, we know the law now that this is per se a particular serious crime, an aggravated felony drug conviction. So, we're looking at . . . the only reason why this is a discussion at all is because that case came out after . . . the matter of Y.L. came out after the fact. Otherwise, the board would have relied on that and said, this is a per se particular serious crime. But in any event, we know from this court's jurisprudence, Blandino and others, that drug crimes have . . . are particularly dangerous, generally. And in this case, when we consider all the evidence, the agency's decision that this was a particular serious crime should be upheld. All these other issues are looking to reweigh the evidence and it's just not what this court should do. To be clear, I understand the reweighing is not allowed. But what is allowed is to look at whether or not the I.J. relied on facts that it could. And that's what I'm looking at. And we do have purview over that. Sure. And I would suggest that the I.J. relied on sufficient facts to make that determination. They know that he knew that she was convicted, that she was part of a major conspiracy, that she was convicted of a . . . Well, that's exactly right. Because they found she was the middle person. They found that she was the source. And the fact that she was sentenced for 30 months as a result. 30 months versus, you know, other cases that get particular serious crime are the sentences are much higher. That may be so. But, of course, she served as a government witness and that's what reduced her sentence. All the reason also still to determine . . . I mean, does the I.J. get to consider that? The fact that it was a reduced sentence? Yeah, that she was . . . she cooperated. Well, the fact that she cooperated doesn't go to the issue of whether it was a particular serious crime at all. The fact that she cooperated goes to the fact that the overall sentence was reduced. Because you just pointed to the length of the sentence. I'm sorry, I was confused. That's okay. My point on that was simply that the agency knew that she was convicted of this crime for which she served two and a half years. It would have been longer if not for the reduced sentence, most likely. And all that together is sufficient to satisfy the first three factors of the Franteschi test. There's no separate need for dangerousness. Combine all that with the exhaustion argument and this Court should have no problem, I think, in affirming and denying the petition for review. Mr. Lawrence, let me ask you a question. Sure. Can the I.J. look at a pre-sentence report that the district court judge doesn't ratify by agreeing with it? I don't know of a reason why the I.J. can't look at that. Is it what we term reliable evidence even though Judge Breyer may have said and did say that he was taking the defendant's position? Well, the Board cited the Anaya-Ortiz case saying that all reliable information may be considered including things in the pre-sentencing report. And I guess Your Honor's question is just because Judge Breyer may not have adopted Why can't the I.J. look at the pre-sentence report in Anaya? I see no reason why the immigration judge can't do that. So we respectfully request that the court deny this petition for review. Thank you. Your Honor, a few points on rebuttal. I'd first like to respond to Judge Breyer's question from the last time I was here. With respect to whether or not we exhausted her particularly serious crime claims that's briefed and it appears at pages 66 to 79 of the administrative record and on 71, Your Honor I've looked at those and I don't see any argument that the I.J. violated his role by looking at this pre-sentence report because Judge Breyer had not accepted it. The way we argue that claim, Your Honor, doesn't appear in that fashion however it's No, there's absolutely no argument that the I.J. relied on improper evidence in your BIA brief. There's a lot of argument about the four elements of Frantescu. There's a lot of argument about how this is really a very unserious conspiracy but there's no argument that this evidence that the I.J. relied upon the pre-sentence report is in an invisible basis. My question is why isn't it waived? Your Honor, I would only rely on the decision in U.S. v. Palladio Escalon which says that it's Palladio Escalon it's 359 F. 3rd 1088 which only asserts that it would be claims themselves that we deem waived and not arguments within them. Your Honor, the reason our brief is more clear with respect to the particular serious crime issue because we emphasize that the BIA twice misapplied the law in evaluating and undoubtedly whether or not the evidence weighed in her favor of the specific facts that are in dispute in the pre-sentence report about whether or not that's a particular serious crime is a factor we argue that they misapplied the law by failing to consider an essential fourth and the important case as the government correctly notes they did sign their 28J. We also point to it because it really clarifies this issue that the Francescu factors which are alive and well are the controlling legal analysis in determining whether or not someone has committed a particular serious crime. That's a very discreet question from whether or not once it's been determined that you've committed a particular serious crime you're eligible for withholding removal. In fact, it's a predicate question. Are you arguing that still on that fourth factor is still something that needs to be considered? Your Honor, yes. Assuming, Arguendo, we disagree with you, is that fatal to your argument? No, Your Honor. Just bear with me and say it's the three Francescu factors. We don't accept your argument on the fourth. How did she not waive the argument that you're making now that the IJ improperly relied on the contested pre-sentence report factors? In the first instance, Your Honor, I believe the government waived this exact waiver argument. They had no basis to make this claim and they didn't brief it sufficiently. In any event, they similarly waived their argument to waive, Your Honor, yes. Because they didn't make it in their brief? That's right, Your Honor. And what's your authority for that? We briefed this at page 35, Your Honor. So you're saying the government waived the waiver argument? That's right, Your Honor. I can't find that exact site, Your Honor. Oh, excuse me. It's right here. They failed to brief that's waiver general, Your Honor. I can submit that afterwards. I do have that, and it's something we briefed in terms of the government's waiver of waiver. I don't have it prepared immediately right here. In either event, Your Honor, there's the important issue of whether or not Ms. Biasini's removal should be deferred under the Convention Against Torture. And we believe that here, in response to whether or not the Court in its 2013 order dismissed the issue, it's very clear that they did not dismiss it or reach that issue on its merits. So this issue is alive before this Court. In its 2013 remand order, when Judge O'Scanlan dissented, he used the word deny and dismiss in the same sentence to have different meanings. He said he would disagree with the majority and deny their choice to remand for the particular serious issue. And then they said he said that he would agree with the majority and dismiss the other claims. And for that alone, that suggests that deny and dismiss will have very different meanings. And for that reason, the government's reached CAT or the State Created Danger themes. Kennedy. Counsel, after the 2014 remand, Biasini did not raise the CAT claim before the IJ, as specifically noted in the BIA ruling at ER-5 and 6. The government notes that as well, Your Honor, and that's  It was this Court in Miguel Miguel which held that not re-raising an argument on remand to the IJ is appropriate because you need not re-raise arguments before the BIA more than once. And that decision was in 2007. We felt it futile to re-raise the issue of whether or not she should have a merits hearing on the CAT issue because the BIA, although it was an erroneous interpretation, they read the 2013 order to suggest that the issue was no longer before them. The government then relied on that error, and similarly did not brief any argument against our CAT claim. So speaking of waiver, we contend that the government has waived any argument against the merits of our CAT claim. And even if this Court doesn't find that the government has waived an argument against the merits of our CAT claim, we believe that the BIA made substantial legal error when they failed to consider all the evidence. The standard's clear in the regulations that the IJ and the BIA shall consider all relevant evidence, and that didn't happen. It was this Court in Hiley v. Holder in 2011 that noted that when the BIA did not give due account for record evidence supporting Hiley's position or adequately explain its denial of deferral, that there was prejudice. And in that decision, substantial evidence did not support the BIA's conclusion, and so this circuit or that panel was able to rule on the merits of Hiley's contention there. Thank you very much, Mr. Sheridan. We've taken you past your time. I want to congratulate you for your very thorough presentation. We take our best wishes back to Davis with you, please. Thank you, Mr. Lawrence. In this case, it's marked as submitted. All rise.
judges: Bea, Murguia, Soto